# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**BARBARA J. BARRINGTON,**

      **Plaintiff,**

-vs.-                                    **Case No.: 6:05-cv-1601-Orl-19KRS**

**LOCKHEED MARTIN and U.A.W. LOCAL 788, INTERNATIONAL UNION OF AUTOMOBILE, AEROSPACE-AGRICULTURAL IMPLEMENT WORKERS OF AMERICA,**

      **Defendants.**

_____

## ORDER

This case comes before the Court on the following:

1. Motion to Vacate Arbitration Award, filed by Plaintiff Barbara J. Barrington on October 25, 2005;  (Doc. No. 1);

2. [Amended] Memorandum of Law in Support of Motion to Vacate Arbitration Award, filed on November 10, 2005;  (Doc. No. 9);

3. The Motion to Dismiss and Supporting Memorandum of Law/Memorandum of Law in Opposition to Plaintiff's Motion to Vacate Arbitration Award, filed by Defendant Lockheed Martin Corporation on November 29, 2005;  (Doc. No. 13); and

4.      [Amended] Memorandum of Law in Opposition to Defendant['s] Motion to Dismiss/Supporting Memorandum of Law/Memorandum of Law in Opposition to Plaintiff's Motion to Vacate Arbitration Award, filed on December 9, 2005. (Doc. No. 24-2).

**Background**

The following allegations are taken from Plaintiff's Motion to Vacate Arbitration Award and documents attached as exhibits. (Doc. No. 1). On March 30, 2004, Defendant Lockheed Martin Corporation ("Lockheed") terminated the employment of Plaintiff Barbara J. Barrington ("Barrington") for allegedly violating company policies prohibiting horseplay, unwanted physical contact, and disruption at the workplace. (*Id.* at ¶ 11). Specifically, Barrington was alleged to have violated these policies when, on January 29, 2004, she took a pair of scissors and cut the hair of a co-worker, Rickie Wilson. (Doc. No. 1, Ex. C). Although Wilson and a witness, Wayne Henry, Jr., indicated to Lockheed that Wilson did not consent to this contact, Barrington maintained that she felt that Wilson, who was listening to music through an earpiece at the time, consented to the hair cutting by nodding his head up and down. (Doc. No. 1, Ex. B, p. 3).

Wilson later submitted a statement to Lockheed describing the incident in which he again indicated that he did not give consent to the contact.[1] (Doc. No. 1, Ex. Z-2, p. 12). One or two days later, however, Wilson attempted to withdraw his statement, stating that he did not want Barrington to be fired over the incident. (Doc. No. 1, Ex. Z-1, pp. 28-29).

---

[1] Although the content of Wilson's statement is undisputed, Barrington contends that Lockheed management coerced Wilson into filing such statement against his will. (*See* Doc. No. 1, ¶ 17).

Lockheed nevertheless terminated Barrington. Barrington then requested that Defendant U.A.W. Local 788, International Union of Automobile, Aerospace-Agricultural Implement Workers of America ("the Union") file a grievance on her behalf. (Doc. No. 1, ¶ 12).

Lockheed and the Union are parties to a collective bargaining agreement ("CBA") which governs grievances filed by the Union on behalf of Lockheed employees. (*Id*. at ¶ 5). Pursuant to this CBA, Lockheed has the right to discharge employees "for cause," yet the terminated employee has a right to file a grievance in an attempt to have his or her employment reinstated. (Doc. No. 1, Ex. A, Article VIII). The CBA also provides that in the event the grievance procedure fails to resolve the dispute, the dispute must be submitted to binding arbitration. (*Id*. at Article IX). In terms of the scope of such arbitration, the CBA states:

> The arbitrator shall consider only those issues, including any Amendments that were made pursuant to [the Article of the CBA dealing with grievances], which have been properly carried through all steps of the Grievance Procedure. The arbitrator shall afford to the Company and the Union a reasonable opportunity to present evidence, witnesses, and arguments. Persons testifying may be sworn at the request of either party...The arbitrator shall have no authority to add to, subtract from, modify or amend any provisions of this Agreement.

(*Id*.)

After the grievance procedure failed to produce a mutually acceptable solution, Barrington's grievance went to arbitration, where on July 27, 2005 the arbitrator ruled in favor of Lockheed. The arbitrator, Robert G. Williams, concluded that Wilson had not consented to having his hair cut by Barrington, and that such unwanted physical contact was grounds for termination. (*See* Doc. No. 1, Ex. B). The arbitrator stated that even if the Wilson incident did not provide adequate grounds to terminate Barrington, separate conduct

by Barrington established independent grounds for her firing. Specifically, Williams found that Barrington purposely filed two "abusive" civil defamation lawsuits against two other co-workers in state court in an attempt to punish these co-workers or to portray herself as an "innocent victim" in the eyes of Lockheed. (*See id.*). Although the lawsuits were not issues "properly carried through all steps of the grievance procedure," the arbitrator concluded that such incidents "clearly arose out of the work environment" and were "within the reach of employer discipline." (*See id.*). Thus, Williams took the filing of the lawsuits into consideration and determined that they were an independent ground for Barrington's discharge.

It is undisputed that Barrington asked the Union to seek judicial review of the arbitrator's decision and the Union chose not to do so. (Doc. No. 1, ¶ 24; Doc. No. 13, p. 8). Thus, Barrington has filed *pro se* a motion to vacate the arbitration decision rendered in her case. In such motion, she alleges that the Court should vacate the arbitrator's decision because such decision was procured by corruption, fraud, or undue means. *See* 9 U.S.C. § 10(a)(1). Alternatively, Barrington claims that the arbitrator exceeded his powers or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made. *See* 9 U.S.C. § 10(a)(4).

Specifically, Barrington alleges multiple material errors in her arbitration proceeding. First, Barrington claims that her Union representative, Michael Barnette,[2] breached his duty to fairly represent her by restraining her from testifying at an arbitration hearing on February

---

[2] The parties disagree as to the spelling of Mr. Barnette's surname. The Court will use the spelling that is present in the certified copy of the arbitration proceedings.

18, 2005. (Doc. No. 1, ¶ 16). Barrington further alleges that Barnette and Williams engaged in *ex parte* telephone communications with each other in which Williams formed preconceived opinions about Barrington and her case. (*Id*. at ¶ 19). In addition, Barrington alleges that the Union failed to move for a new representative and arbitrator in her case when she presented them with these concerns. (*Id*. at ¶ 19). Finally, Barrington claims that Williams considered evidence not properly before the tribunal and failed to consider mitigating evidence of fraud on the part of Lockheed when rendering his decision. (*Id*. at ¶¶ 9-10, 21). Barrington claims that these abuses warrant vacation of the arbitrator's decision.

In response, Lockheed has filed a Motion to Dismiss Barrington's motion to vacate pursuant to Rule 12(b) of the Federal Rules of Civil Procedure. (*See* Doc. No. 13). In it, Lockheed asserts that the Court lacks jurisdiction to consider Barrington's claims. Furthermore, it alleges that Barrington lacks standing to challenge the arbitrator's decision. Finally, Lockheed argues that even if Barrington can overcome these procedural hurdles, she has failed to state a claim for which relief can be granted.

This Order analyzes Lockheed's motion to dismiss Barrington's motion to vacate, (Doc. No. 13), and Barrington's amended memorandum in opposition. (Doc. No. 24-2).

### **Standard of Review**

In construing a motion to dismiss, the Court must view any factual allegations in the light most favorable to the plaintiff, consider such allegations as true, and accept all reasonable inferences therefrom. *Jackson v. Okaloosa County, Fla.*, 21 F.3d 1532, 1534 (11th Cir. 1994); *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). Furthermore, the Court must

limit its consideration to the plaintiff's pleading and written instruments attached to it as exhibits. *Fed R. Civ. P.* 10(c); *GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993). A pleading should not be dismissed pursuant to Rule 12(b)(6) for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts showing entitlement to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). *Pro se* pleadings are governed by less stringent standards than pleadings signed by counsel. *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

### Analysis

### A. Federal Rule of Civil Procedure 12(b)

The Federal Rules of Civil Procedure authorize a court, upon suitable showing, to dismiss any action or any claim within an action for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). However, when considering a motion to dismiss, the court has the discretion under Federal Rule of Civil Procedure 12(b) to decide whether it will accept materials outside the pleadings and convert the motion to dismiss to one for summary judgment. *See* Fed. R. Civ. P. 12(b); *Burns v. Harris County Bail Bond Bd.*, 139 F.3d 513, 517 (5th Cir.1998); *Skyberg v. United Food and Commercial Workers Int'l Union*, 5 F.3d 297, 302 (8th Cir.1993). A decision on whether or not to convert a motion to dismiss into a motion for summary judgment rests solely within the wide discretion of the trial court. *See Skyberg*, 5 F.3d at 302, n. 2; *EEOC v. Reno*, 758 F.2d 581, 583 n. 6 (11th Cir. 1985).

Although both parties in this case devote portions of their written arguments to discussing additional facts not found in the motion to vacate or its exhibits and disputing

whether or not Barrington's allegations actually occurred, (*See, e.g.,* Doc. No. 13, pp. 17-20; Doc. No. 24-2, pp. 2-4), the Court will not exercise its discretion to convert Lockheed's Motion to Dismiss into a motion for summary judgment. The written submissions of the parties make clear that neither party intended to convert their arguments into a Rule 56 motion for summary judgment.[3] Furthermore, neither party has been given an adequate opportunity to present all material made pertinent to a summary judgment motion under Rule 56. Fed. R. Civ. P. 12(b). Thus, the Court will not accept any matters outside the pleading presented by either party.

### B.  Jurisdiction

The Court finds that it has jurisdiction to hear Barrington's motion. In the case at bar, Barrington is moving to vacate an arbitration decision and has sued both her Union and her former employer. Plaintiff cites two bases for federal question jurisdiction -- the Federal Arbitration Act (FAA)[4] and the Labor Management Relations Act (LMRA)[5].

A request to review an arbitration award made pursuant to the FAA, which may be opposed on grounds that the arbitrator exceeded his powers, may be made either in the court specified in the parties' arbitration agreement or in the federal court in the district where the award was entered. *See* 9 U.S.C. §§ 9, 10; *J.A. Jones Constr. Co. v. Flakt, Inc.,* 731 F.Supp.

---

[3] *See* Doc. No. 24-2, p. 1, n. 1 (discussing the intent of Plaintiff's motion); Doc. No. 13, p. 1, n. 1 (stating that Lockheed's motion is intended as a motion to dismiss, and that for such purposes, Lockheed must accept the factual allegations as true); *Id*. at p. 10, n. 5 (pointing out additional factual and legal arguments Lockheed could have made, and stating that such arguments "will be raised by Lockheed Martin in a motion for summary judgment, if necessary").

[4] Codified at 9 U.S.C. §§ 1 et. seq.

[5] Codified at 29 U.S.C. §§ 185 et. seq.

1061, 1063-64 (N.D. Ga. 1990). The law is quite settled that the FAA does not by itself confer subject matter jurisdiction on the federal courts and that plaintiffs seeking review of an arbitration award must allege an independent jurisdictional basis to entertain cases arising under the FAA. *See, e.g., Moses H. Cone Memorial Hospital v. Mercury Const. Co.*, 460 U.S. 1, 26 n. 32 (1983); *Baltin v. Alaron Trading Corp.*, 128 F.3d 1466, 1469 (11th Cir. 1997).

Although the FAA cannot support federal jurisdiction alone, Plaintiff has cited adequate facts in her motion to vacate to trigger federal question jurisdiction based on the LMRA. Not only does Barrington allege that the arbitrator exceeded his powers in finding against her, but she also alleges that the Union breached its duty to fairly represent her by engaging in *ex parte* communications with the arbitrator, failing to present evidence to the arbitrator favorable to her case, and failing to move for a new representative and arbitrator in her case when she presented the Union with these concerns. (Doc. No. 1, ¶¶ 15-21). Barrington further alleges that these transgressions led to a decision either procured by corruption, fraud, or undue means, or a decision in which a mutual, final, and definite award upon the subject matter submitted was not made. (Doc. No. 1, ¶¶ 9-10).

The Supreme Court has held that a suit is properly before federal courts under the LMRA where an employee sues for vindication of her "uniquely personal rights" under a contract between an employer and a labor union. *Smith v. Evening News Assn.*, 371 U.S. 195, 198-200 (1962). "Uniquely personal rights" an employee may seek to vindicate under Section 301 of the LMRA include rights related to "wages, hours, overtime pay, and *wrongful discharge.*" *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 562 (1976);

*Darden v. U.S. Steel Corp.*, 830 F.2d 1116, 1119 (11th Cir. 1987) (emphasis added). Thus, construing the allegations in this case in a light most favorable to the plaintiff, the Court finds Barrington has averred sufficient facts to establish federal question jurisdiction in this case.

**C. Applying the FAA to Arbitrations Under Collective Bargaining Agreements**

Lockheed Martin argues that the FAA does not apply to arbitrations conducted pursuant to collective bargaining agreements, and thus that Barrington has failed to state a claim for which relief can be granted under the FAA. This argument is not well taken.

Lockheed argues that it is an open question in the Eleventh Circuit as to whether the FAA applies to arbitrations conducted pursuant to collective bargaining agreements, *see, e.g.*, *Brisentine v. Stone & Webster Eng'g Corp.*, 117 F.3d 519, 525 (11th Cir. 1997), yet at the same time asserts that its position is the "majority rule." (Doc. 13, p. 10). As Lockheed notes, the Fifth Circuit has suggested that suits arising under Section 301 of the LMRA are outside the scope of the FAA. *Int'l Assn. of Machinists and Aerospace Workers v. Goodrich Corp.*, 410 F.3d 204, 207 n.2 (5th Cir. 2005).

An examination of the case law, however, reveals that this issue is not as settled as Lockheed argues, as the Circuit Courts of Appeals differ as to what role, if any, the FAA plays in construing arbitrations conducted pursuant to collective bargaining agreements. First, the United States Supreme Court has recently determined that the FAA generally applies to all contracts of employment, except those involving "transportation workers" in the interstate transportation industries. *Circuit City v. Adams,* 532 U.S. 105, 119 (2001). Although this determination would appear to settle the issue as it implicitly includes

collective bargaining agreements,[6] and Barrington is not a transportation worker, there is a dispute among the Circuits as to whether *Circuit City* provides any guidance regarding whether the FAA applies to arbitrations conducted under collective bargaining agreements. *See, e.g. International Broth. of Elec. Workers, Local Union No. 545 v. Hope Elec. Corp.*, 380 F.3d 1084, 1097-98 (8th Cir. 2004); *Goodrich*, 410 F.3d at 207 n.2. Neither Lockheed nor the Court's independent research has produced a single Eleventh Circuit case which has stated that the FAA does not apply in the instant situation.

The Court has surveyed *post-Circuit City* cases among the other Circuits. First, the Seventh Circuit has held that the FAA would apply in an analogous situation. *See Smart v. Int'l Broth. of Elec. Workers, Local 702*, 315 F.3d 721, 724-25 (7th Cir. 2002); *see also Pryner v. Tractor Supply Co.,* 109 F.3d 354, 358 (7th Cir. 1997); *Briggs & Stratton Corp. v. Local 232, Int'l Union, Allied Ins. Workers of Am.*, 36 F.3d 712, 715 (7th Cir. 1994). In so finding, the Court first found that the FAA applies in challenging an arbitrator's decision so long as there is no conflict with an express provision of Section 301of the LMRA. *Smart*, 315 F.3d at 724-25. After examining the FAA, the LMRA, and the facts of the case in *Smart*, which were similar to the case at bar, the Seventh Circuit determined that there was no conflict between the statutes, and thus that procedures outlined in the FAA applied. *Id*.

Other Circuits, however, disagree. The Second Circuit has held that the FAA does not apply in this situation, although its opinion was issued prior to *Circuit City*. *See Coca Cola Bottling Co. of N.Y. v. Soft Drink and Brewery Workers Union Local 812*, 242 F.3d 52,

---

[6] *See Goodrich,* 410 F.3d at 207, n. 2 ("At first blush, this holding implicitly includes collective bargaining agreements...").

53 (2d Cir. 2001) (issued Feb. 26, 2001, one month prior to *Circuit City*). The Eighth Circuit has also rejected an FAA challenge to an arbitration decision in a suit brought under section 301 of the LMRA. *Int'l Broth. of Elec. Workers, Local Union No. 545 v. Hope Elec. Corp.*, 380 F.3d 1087, 1097 (8th Cir. 2004). As noted by Lockheed, the Fifth Circuit also appears to agree with the Eighth Circuit, although admittedly only in dictum. *Goodrich*, 410 F.3d at 207, n.2; *Int'l. Chem. Workers Union v. Columbian Chemicals* Co., 331 F.3d 491, 494 (5th Cir. 2003).

Thus, this is an unsettled area of the law as to which the Eleventh Circuit has not issued a definitive opinion and other circuit courts differ. Upon an examination of the cases, it appears that the Eleventh Circuit would agree with the Seventh Circuit and refuse to hold that Barrington has failed to state a claim upon which relief can be granted under the FAA. There are factual similarities between *Smart* and the instant case. Additionally, implied pre-emption and repeals by implication are generally disfavored. *TVA v. Hill*, 437 U.S. 153, 189-90 (1978); *Pryner*, 109 F.3d at 358. A third reason is the broad scope of the FAA.

Although the Federal Arbitration Act has no particular reference to collective bargaining agreements, the Supreme Court has indicated that the Act was enacted with a broad scope in mind. The FAA's "purpose was to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991). The FAA broadly provides that a written provision in "a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract ... shall

be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. In fact, the FAA not only "declared a national policy favoring arbitration," but actually "withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984). Because of its scope, the Supreme Court has read the Act to "manifest a 'liberal federal policy favoring arbitration agreements.'" *Gilmer*, 500 U.S. at 25 (quoting *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).

Finally, some of the reasoning of the other Circuits which hold that the FAA does not apply to arbitrations conducted pursuant to collective bargaining agreements is undercut by the underlying reliance of these Courts on the FAA in interpreting LMRA claims. For instance, both the Second and Fifth Circuits have noted that Courts may rely on the FAA "for guidance" when reviewing a case involving an arbitration decision arising under Section 301 of the LMRA where the arbitration was conducted pursuant to a collective bargaining agreement. *See Int'l Chem. Workers Union,* 331 F.3d at 494-499 (stating the above principle and then discussing the FAA in a decision upholding an arbitration award); *Coca-Cola*, 242 F.3d at 54 (explaining "that the body of law developed under Section 301 will at times draw upon provisions of the FAA, but by way of guidance alone"). Such reliance on the FAA, even if only "for guidance alone," seems to go against the rationale for having a blanket rule against applying the FAA in the first place – namely, that adherence to the FAA may lead to anomalous or bizarre results. *See Coca-Cola*, 242 F.3d at 55.

While the Court shares the Second Circuit's concern that adherence to the FAA, an earlier enacted statute, in Section 301 cases may lead to an inequitable result, the better approach to cases such as these is the Seventh Circuit's approach, which examines the statutes at issue for conflict and applies the FAA only if it does not contradict the more specific provisions of the LMRA. *See, e.g., Smart,* 315 F.3d at 724-25. This would allow courts to give effect to the broad scope of the FAA and still avoid potentially anomalous results.

As in *Smart*, there is no conflict between the two sections of these statutes in the instant case. *See Smart*, 315 F.3d at 724-25; *Pryner,* 109 F.3d at 358-65. Thus, because the Court finds the Eleventh Circuit would likely agree with the Seventh Circuit's approach to applying the FAA to arbitration proceedings conducted pursuant to collective bargaining agreements, Barrington has stated a claim for relief under the FAA.

### D. Standing

Lockheed maintains that Plaintiff lacks standing to move to vacate the arbitrator's decision. Specifically, Lockheed argues that because the arbitration proceeding was officially styled as an action between the Union and Lockheed Martin, Barrington is not officially a party to the arbitration. This argument is not well taken.

As the lone source of authority supporting the proposition that Barrington lacks standing to move for vacation of the arbitration award, Lockheed cites *Acuff v. United Papermakers & Paperworkers, AFL-CIO.* 404 F.2d 169 (5th Cir. 1968). *Acuff*, however, is distinguishable for at least two reasons. First, *Acuff* involved a plaintiff who wanted to intervene in a suit and not a plaintiff who filed suit on her own. Secondly, and more

importantly, in the instant case Barrington has alleged arbitrary action and bad faith both on behalf of the Union and the arbitrator, as opposed to just the arbitrator. *Acuff* itself strongly suggests, and other courts have held, that when an employee alleges a breach of the duty of fair representation by a labor union, such allegation factually distinguishes the case from *Acuff*, and the employee has standing to move to vacate the arbitration award.[7]  Thus, because Barrington has alleged a breach of the duty of fair representation on behalf of the Union, and because an employee may sue for vindication of her "uniquely personal rights" under a contract between an employer and a union,[8] the Court finds Barrington has standing to pursue her Motion to Vacate Arbitration Award.

### E.  Failure to State a Claim

Lockheed further argues that Barrington has failed to state a claim for which relief can be granted under both Section 10 of the Federal Arbitration Act and Section 301 of the Labor Management Relations Act. However, looking only at the "four corners" of the pleading, viewing any factual allegations in the light most favorable to the plaintiff, considering such allegations as true, and accepting all reasonable inferences drawn

---

[7] *Acuff*, 404 F.2d at 171; *DelCostello v. Int'l Brotherhood of Teamsters*, 462 U.S. 151, 165-66 (1983); *Bills v. U.S. Steel LLC*, 267 F.3d 785, 786-788 (8th Cir. 2001); *F.W. Woolworth Co. v. Miscellaneous Warehousemen's Union, Local No. 781*, 629 F.2d 1204, 1209-1210 (7th Cir. 1980). Other Circuits have held that employees have standing in this situation regardless of whether they have alleged bad faith on the part of the labor union. *See, e.g.*, *Ass'n of Contracting Plumbers of the City of New York v. Local Union No. 2 United Ass'n of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada*, 841 F.2d 461, 467 (2d Cir. 1988).

[8] *Smith,* 371 U.S. at 198-200.

therefrom,[9] the Court finds that Plaintiff has adequately stated facts that, if true, would support vacation of the arbitrator's decision.

### 1. Failure to State a Claim under the FAA

First, with respect to Barrington's FAA claim, the motion to vacate alleges that the arbitrator's decision should be vacated either because the decision was procured by corruption, fraud, or undue means, or because the arbitrator exceeded his powers or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made. *See* 9 U.S.C. §§ 10(a)(1), 10(a)(4). Specifically, Barrington alleges that the arbitrator engaged in *ex parte* telephone communications with her Union representative in which he formed preconceived opinions about Barrington and her case and failed to consider mitigating evidence of fraud on the part of Lockheed when rendering his decision. (Doc. No. 1, ¶¶ 19, 21). Further, Barrington alleges that the arbitrator based his decision on extraneous issues not presented to him which had not been fully and properly carried through the requisite grievance procedure. (Doc. No. 1, ¶¶ 9-10).

While allegations of mere indiscretions, slight irregularities, or departures from formal technicalities are insufficient in seeking to vacate an arbitration award, serious misconduct occurring during an arbitration proceeding or a manifest disregard of the law may result in a vacation of the arbitrator's decision. *See Sterling Fluid Sys. (USA), Inc. v. Chauffers, Teamsters, & Helpers Local Union #7*, 322 F.Supp.2d 837, 842-844 (W.D. Mich. 2004), *affirmed by* 144 Fed.Appx. 457 (6th Cir. 2005). Courts have held arbitration awards

---

[9] *See*, *Jackson v. Okaloosa County, Fla.*, 21 F.3d 1532, 1534 (11th Cir. 1994); *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

should be vacated when the arbitrator has refused to hear competent and material evidence or where the arbitrator has received and considered evidence outside the scope of the proceeding without the consent of a party.[10] Furthermore, courts have found the standards set forth in the FAA violated where an arbitrator based an award on statements not produced or disclosed at the hearing, or where the arbitrator made a determination not required for a resolution of the dispute.[11]

Thus, taking Barrington's allegations as true, and accepting all reasonable inferences drawn from them, Barrington has clearly stated a claim for relief under the FAA.

### 2. Failure to State a Claim under the LMRA

The Court further finds that Barrington has adequately stated a claim for relief under the Labor Management Relations Act. In the instant case, Barrington alleges that her representative, Michael Barnette, breached his duty to fairly represent her by restraining her from testifying at an arbitration hearing. (Doc. No. 1, ¶ 16). Barrington further claims that after Barnette prevented her from testifying against her will at the first arbitration hearing, she sent a letter to the arbitrator and filed a complaint against Barnette with the National Labor Relations Board, stating that he breached his duty to fairly represent her. (*Id.*) She

---

[10] *See, e.g.*, *Gulf Coast Indus. Workers Union v. Exxon Co., USA,* 70 F.3d 847 (5th Cir.1995) (unfair exclusion of evidence can justify vacatur of award); *Weinberg v. Silber*, 140 F.Supp.2d 712, 719-20 (N.D. Tex. 2001); *Seaboard Surety Co. v. Pennsylvania*, 38 A. 2d 58 (Pa. 1944) (noting that admitting and considering evidence without the consent or notice to the opposing party, or unauthorized *ex parte* investigations without the consent of a party justify vacatur where prejudicial).

[11] *E.g.*, *Textile Workers Union of Am. v. American Thread Co*., 291 F.2d 894, 896 (4th Cir. 1961); *Truck Drivers and Helpers Union v. Ulry-Talbert Co.*, 330 F.2d 562, 563 (8th Cir. 1964); *Socony Vacuum v. Socony Mobil Oil Co.*, 369 F.2d 480, 482 (2d Cir. 1966).

further alleges that when Barnette learned of this, he became very angry with her, yelled at her, and stated that he just spoke with the arbitrator and that she was going to lose her case. (*Id.* at ¶¶ 18-19). When Barrington informed Barnette that such contact was in violation of the rules, she claims Barnette yelled at her again. (*Id.* at ¶ 19). Barrington states that she mailed letters to Barnette's boss, the Union President, and a lawyer for the Union, which detailed her conflicts with Barnette, her opinion that Barnette was angry with her, and the *ex parte* communications between Barnette and the arbitrator. (*Id.* at ¶¶ 19-20). Barrington stated that she felt that by discussing the case with Barnette, the arbitrator formed a preconceived opinion about her case. (*Id.* at ¶ 19). Barrington alleges she asked the Union officials she contacted to replace Barnette and to move for a new arbitrator, but they refused. (*Id.*) Finally, Barrington alleges that the Union also breached its duty to fairly represent her by failing to move to vacate the arbitrator's order. (*Id.* at ¶ 24).

Mere trivial errors alleged to have taken place during the grievance process or the arbitration proceeding are insufficient to establish a violation of the LMRA by an employee's labor union representative. *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 571 (1976). A plaintiff claiming a breach of the duty of fair representation against a labor union must show that the union's conduct toward her was arbitrary, discriminatory, or done in bad faith. *Vaca v. Sipes*, 386 U.S. 171, 190 (1967). A union acts arbitrarily only when its actions have no rational basis. *Marquez v. Screen Actors Guild*, 525 U.S. 33, 46 (1998).

Taking Barrington's allegations as true, and accepting all reasonable inferences drawn from them, Barrington has stated a claim for relief under the LMRA. While

Lockheed is correct in arguing that the Union could not legally breach its duty of fair representation solely by failing to move to vacate the arbitrator's decision or making various strategic evidentiary decisions,[12] the allegations of Barrington's motion to vacate create the reasonable inference that the Union's representation was arbitrary, discriminatory, or in bad faith. *See, e.g., Vaca*, 386 U.S. at 190. Barrington's motion asserts that she continually had conflict with her Union representative, Michael Barnette, over his handling of her case. Barrington accused Barnette of violating several rules, including breaching his duty to fairly represent her and engaging in *ex parte* communications with the arbitrator. Barrington publicized her feelings to her arbitrator and Barnette's superiors, and states that Barnette became angry with her and yelled at her on at least one occasion.

These allegations, if true, are sufficient to demonstrate that the Union breached its duty to fairly represent Barrington. If Barnette did contact the arbitrator and caused him to form preconceived opinions about Barrington and her case, a strong inference that his actions "seriously undermine[d] the integrity of the arbital process" is created. *See Hines*, 424 U.S. at 567. Furthermore, depending on the degree with which Barrington and Barnette had conflict with each other, a reasonable inference is created that the Union's decision not to replace Barnette or seek a new arbitrator was discriminatory or had no rational basis. *Marquez*, 525 U.S. at 46 (1998).[13]

---

[12] *See, e.g., Bonds v. Coca-Cola Co.*, 806 F.2d 1324, 1326 (7th Cir. 1986); *Patterson v. Int'l Board of Teamsters*, *Local 959*, 121 F.3d 1345, 1349 (9th Cir. 1997).

[13] Lockheed's additional arguments that Barrington's claims lack proof and that the Union did not in fact breach its duty of fair representation, (Doc. No. 13, pp. 17-20), are improper at this stage in the proceedings. For purposes of a Motion to Dismiss, the Court must
(continued...)

For these reasons, Lockheed's Motion to Dismiss is hereby denied.

## Conclusion

For the foregoing reasons, the Motion to Dismiss and Supporting Memorandum of Law/Memorandum of Law in Opposition to Plaintiff's Motion to Vacate Arbitration Award, (Doc. No. 13), filed by Defendant Lockheed Martin Corporation, is **DENIED**.

**DONE** and **ORDERED** in Chambers in Orlando, Florida this _10th_ day of January, 2006.

_____
PATRICIA C. FAWSETT, CHIEF JUDGE
UNITED STATES DISTRICT COURT

Copies furnished to:

Counsel of record

Unrepresented party

---

[13](...continued)
limit itself to the well-pleaded allegations of the pleading, consider such allegations as true, and accept all reasonable inferences that can be drawn from them. *Jackson*, 21 F.3d 1532, 1534 (11th Cir. 1994).