# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**BARBARA J. BARRINGTON,**

                              **Plaintiff,**

-vs-                                                    **Case No.  6:05-cv-1601-Orl-KRS**

**LOCKHEED MARTIN, ET AL.,**

                              **Defendants.**

_____

# ORDER

In this case, Plaintiff Barbara Barrington asks the Court to vacate an arbitration award. Doc. No. 1.  In support of her motion, which the Court has treated as a complaint, Barrington submitted a number of documents, including the transcript of the arbitration proceeding.[1]  *Id.*

After conducting discovery, the parties filed cross-motions for summary judgment, and responses thereto, as follows:

(1)     Plaintiff[']s] Motion for Summary Judgment/Memorandum of Law in Support/ Demanding Jury Trial, doc. no. 128, and the responses thereto, doc. nos. 132 & 136;

(2)     Defendant Lockheed Martin Corporation's Motion for Summary Judgment, doc. no. 122, and the response thereto, doc. no. 134;

(3)     Motion for Summary Judgment . . . of Defendant United Auto Workers Local 788, doc. no. 124, and the response thereto, doc. no. 134.

_____

[1]  The arbitration hearing was conducted on February 1, 2005, and on April 13, 2005.  I will refer to the February 1, 2005, hearing transcript as TR. I, and to the April 13, 2005, hearing transcript as TR. II.

In support of her motion for summary judgment, Barrington relied upon the documents submitted with her motion to vacate the arbitration award as well as additional documents.  Doc. No. 128.  These additional documents include the Deposition of Barbara Klein (Klein Dep.), doc. no. 128-12, and the Deposition of Georgi-Ann Bargamian (Bargamian Dep.), doc. no. 128-13.  In support of her response to the defendants' motions for summary judgment, Barrington submitted additional documents, including the Deposition of Ron Gettelfinger (Gettelfinger Dep.), doc. no. 134-3, and the Affidavit of Eunice M. Stokes-Wilson (Stokes-Wilson Aff.), doc. no. 134-5.

In support of its motion for summary judgment, Defendant Lockheed Martin Corporation (LMC) submitted the Deposition of Barbara Joyce Barrington (Barrington Dep.), and supporting exhibits, doc. no. 123-2 through 123-44, and the Declaration of Scott C. Israel (Israel Decl.), and supporting exhibits, doc. no. 123-45 through 123-50.

In support of its motion for summary judgment, Defendant United Auto Workers Local 788 (Local 788), submitted the Affidavit of Michael J. Barnette (Barnette Aff. II), doc. no. 125.  It also relied on an earlier affidavit by Barnette, doc. no. 74 (Barnette Aff. I), and the Affidavit of Garry Mason, doc. no. 72 (Mason Aff.).  In response to Barrington's motion, Local 788 also relied on the Affidavit of Barbara A. Klein, doc. no. 68 (Klein Aff.).

I have considered all of the papers and supporting documents submitted by the parties, and I am otherwise thoroughly familiar with the record in this case.  The case has been referred to me for disposition under 28 U.S.C. § 636(c) and pursuant to the consent of the parties.  Doc. No. 93.

## I.      STATEMENT OF FACTS.

### A.      *Summary of the Events Leading to the Grievance*.

#### 1.      The Collective Bargaining Agreement.

Local 788 represents production and maintenance employees at Lockheed Martin Missiles and Fire Control – Orlando.  Israel Decl. ¶ 2.  Barrington was an employee of Lockheed Martin Missiles and Fire Control – Orlando at the time of the events leading to the arbitration, and she was a member of Local 788. TR. I at 24, 116; TR. II at 6; Barrington Dep. at 140.

LMC, Local 788 and the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW), of which Local 788 is a part,[2] entered into a collective bargaining agreement (CBA) effective from November 1, 2003, to October 31, 2007. Israel Decl. ¶ 3, & ex. A.  Under the CBA, LMC has the right to discharge employees "for cause." *Id.*, ex. A, Art. II.  The CBA also provides a grievance procedure to resolve disputes between the parties, *id.*, Art. VIII, which culminates in binding arbitration if the dispute is not resolved during the grievance process, *id.*, Art. IX.

#### 2.      Work Place Incidents.

During the lunch hour at work on January 29, 2004, Barrington offered to cut and groom the hair of two of her co-workers, Wayne Henry and Rickie Wilson.  TR. I at 80.  At the time she made the offer, Wilson was wearing headphones and listening to music. TR. I at 77-78. Wilson declined Barrington's offer, but Barrington did not hear him.  TR. I at 81-82; TR. II at 33, 49.

---

[2]  I will sometimes refer to the UAW and Local 788 collectively as the Union.

Barrington misconstrued Wilson bobbing his head while listening to the music as assenting to her offer. TR. II at 49.   Thereafter, Barrington trimmed Wilson's hair.  TR. II at 34, 49.

Initially, Wilson was not upset by Barrington's actions.  TR. I at 85, 89.  However, after co-workers teased him about the incident, Wilson became upset.  TR. I at 85; TR. II at 9, 41.  JoAnn McCarthren, another LMC employee, heard Wilson mutter that he was angry.  TR. I at 117; TR. II at 91.  Another employee approached Barrington and said that she should be "walked out" for cutting Wilson's hair.  TR. II at 51.

One or more employees encouraged Wilson to file a complaint regarding the incident.  TR. II at 11, 38, 52.  Barrington later encountered McCarthren in the restroom and asked McCarthren whether she had encouraged Wilson to file a complaint.  TR. I at 54.  McCarthren said that she had not done so.  McCarthren and Barrington argued about the issue.  TR. 1 at 118-19; TR. II at 52-53.

3.   Internal Investigation.

LMC issued *Guidelines for Professional Conduct* which prohibit "[h]arassment, hazing or horseplay," "[t]hreatening or creating a hostile work environment," and "[d]isrupting the workplace."  Compl. ex. B (Arbitrator's Decision) at 9.  LMC also has a written policy against threats and violent conduct.  Among other things, the policy prohibits conduct "for which the intended result is threatened or actual harm to people or property.  Examples . . . include but are not limited to: threats of violence (including implied threats), assaults, battery (including . . . unwelcome physical contact) . . . intimidating . . . [.] This policy governs conduct in the workplace as well as off-premises situations with a relationship to the workplace."  *Id.*  Alleged violations of

-4-

these provisions are referred to the LMC Workplace Violence Committee to determine what steps to take if an employee violates the provisions.  TR. I at 33.

Phil Conduff, the general foreman of the work place where the hair-cutting incident occurred, learned about the incident the next day.  TR. I at 108.  He left a message about the incident with Lester King, the manager of human resources and union relations at LMC, and asked that he become involved.  TR. I at 24.  King later met with Wilson, who gave a written statement.  TR. I at 24; TR. II at 11-12, 15, 26-28.  McCarthren also filed a written complaint against Barrington, demanding an apology for the argument that occurred in the restroom.  TR. I at 120.

Thereafter, King held a meeting with Wilson, Barrington, Henry and a union representative.  King instructed Barrington to write up her version of the events, which Barrington did.  TR. I at 27; TR. II at 31; Barrington Dep., LMC exs. 1 & 2.

Subsequently, Wilson gave King a written request to withdraw his complaint against Barrington because he did not want Barrington to be disciplined.  TR. I at 28-29; Barrington Dep., LMC ex. 8.

On February 3, 2004, Belinda McGill, another employee, filed a complaint against Barrington alleging that Barrington threatened her.  TR. I at 47-48.  The same day, Barrington filed a cross-complaint against McGill.  TR. II at 59.

King completed his investigation of the hair-cutting incident and the complaints filed by Barrington, McGill and McCarthren.  TR. I at 40-41.  Greg A. Karol, director of human resources and union relations, interviewed Wilson and reviewed the results of King's investigation.  TR. I at

68.  Thereafter, the results of the investigation were presented to the Workplace Violence Committee.  TR. I at 40.

Meanwhile, Barrington requested and was granted medical leave from February 4 through March 28, 2004.  TR. II at 59-62.  She left work early on February 4, 2004.  TR. I at 63.

Based on the internal investigation, the Workplace Violence Committee determined that Barrington should be terminated.  TR. I at 33.  This decision was made while Barrington was on medical leave. TR. I at 66.  However, because it was company policy not to terminate someone while they were on approved leave, the committee did not terminate Barrington until the end of her leave.  *Id*.

On March 4, 2004, before she learned of the Workplace Violence Committee's decision, Barrington filed lawsuits in Florida state court against McCarthren and McGill. In the complaints, Barrington alleged that McCarthren and McGill made defamatory statements about her.  TR. II. at 66-67; Barrington Dep., LMC exs. 12 & 13.  Barrington later voluntarily dismissed these cases. TR. II at 67.

On March 30, 2004, King wrote Barrington a termination letter that reads as follows:

> On January 29, 2004, while in the manufacturing area, you cut an employee's hair without his permission.  This action is in violation of Company policies prohibiting horseplay, unwanted physical contact and causing a disruption in the workplace.
> A disciplinary committee consisting of members of senior management has reviewed this action and has determined that your employment be terminated effective immediately.

Compl. ex. C.

B.        *Grievance and Arbitration Proceedings*.

In April 2004, Barrington filed a grievance regarding her termination pursuant to the provisions of the CBA.  Compl. ex. E; CBA Art. VIII, sec. 1.  The grievance addressed only her termination as a result of cutting Wilson's hair without his consent.  Compl. ex. E.  The grievance was not resolved by LMC through its internal levels of review. *See* Compl. ex. E.   The matter was then submitted to arbitration.  *See* CBA Art. IX.

Under the CBA, the arbitrator's decision "shall be final and binding on [LMC], the Union, and the employee . . . involved," subject to certain limitations not relevant to the present case.  *Id.* In terms of the scope of the arbitration, the CBA reads as follows:

> The arbitrator shall consider only those issues, including any Amendments that were made pursuant to [the Article of the CBA dealing with grievances], which have been properly carried through all steps of the Grievance Procedure.  The arbitrator shall afford to the Company and the Union a reasonable opportunity to present evidence, witnesses, and argument.  Persons testifying may be sworn at the request of either party. . . . The arbitrator shall have no authority to add to, subtract from, modify or amend any provisions of this Agreement.

*Id.* at sec. (c).

Barrington was represented by Michael Barnette, who is the International Representative for the UAW, Region 8, which includes Florida.  Barnette Aff. I ¶¶ 1, 5.  Barnette had extensive experience as a union advocate at arbitrations.  *Id.* ¶ 6.   Before the arbitration began, LMC tendered settlement offers to Barnette.  Barnette advised Barrington that LMC would not make a settlement offer if it could prove its case, and he recommended that she not accept the offers. Barrington Dep., 180-88 & Union ex. 7.  Barrington did not accept a settlement offer.

Arbitrator Robert G. Williams began the arbitration hearing on February 1, 2005.  TR. I. During this hearing, King, Karol, Henry, McCarthren, and Conduff testified.  TR. I. Wilson was no longer employed by LMC, and his whereabouts were unknown.  TR. I at 35; Barnette Aff. I ¶ 10. Accordingly, he did not testify at the hearing.

Counsel for LMC elicited testimony from McCarthren about the defamation lawsuit Barrington filed against her.  TR. I at 120. Barrington avers that Barnette "restrained" her from testifying, despite her pleas that she be permitted to testify.   Barrington Dep. at 9, 12, 31. Barrington later surmised that Barnette did not call her to testify in order to protect McCarthren and McGill, but she conceded that she had no evidence to support her suspicion. *Id.* at 35-38, 261.

Barrington also requested that Barnette move to admit Wilson's affidavit, and call other employees, which Barnette did not do.  *Id*. at 28, 33.  Barnette attests that he did not call Barrington to testify because he believed, among other things, that by not producing Wilson,  LMC had failed to satisfy its burden of proof.  Barnette Aff. I ¶ 10.

Because of her dissatisfaction with the way Barnette handled the arbitration, Barrington wrote Arbitrator Williams a letter in which she requested that the hearing be reopened so that she could testify.  Barrington Dep., LMC ex. 3.  She also sent a letter to the International Board of the UAW in care of Ron Gettelfinger, President of the UAW, and Gary Castell, Regional Director of the UAW, requesting that the hearing be reopened and complaining about Barnette.  Compl. ex. J. Gettelfinger forwarded her letter for review.  Gettelfinger later learned that the arbitration had been reopened as Barrington requested.  Gettelfinger Dep. at 7-10.

Meanwhile, Arbitrator Williams wrote LMC and the Union to determine whether they opposed reopening the hearing.  Barrington Dep., LMC ex. 5.  Barnette wrote a responsive letter indicating that "[e]ven though the Union feels it has met its obligations, we will agree to resume the hearing . . . ."  Barrington Dep., LMC ex. 4.   Arbitrator Williams telephoned Barnette to ask about the Union's intentions with respect to a reopened hearing.  Barrington Dep., LMC ex. 6 at 2. Barnette spoke with Arbitrator Williams "only for the purpose of confirming a date for the continuation of the arbitration hearing."  Barnette Aff. II ¶ 7.

When Barrington discovered that Barnette had spoken with Arbitrator Williams, she became concerned that Barnette had violated ethical rules, and may have made statements prejudicial to her case.  Barrington Dep. at 49-55; Barrington Dep., Union ex. 5.  Barrington then submitted a request to the UAW that she be appointed a different representative,  because she believed that Barnette would not represent her adequately because he was angry with her for contacting Arbitrator Williams.  Barrington Dep. at 50-55.  She also requested appointment of a new arbitrator.  *Id.* at 56.

Georgi-Ann Bargamian, an associate counsel for the UAW, responded to Barrington's request.  She explained that Arbitrator Williams had been selected by the Union and LMC under the provisions of the CBA and relevant rules.  She also indicated that contact between Barnette and Arbitrator Williams to schedule a date for reopening the arbitration hearing was not inappropriate, and raised no concern about the arbitrator's impartiality or Barnette's ability to prosecute her grievance.  *See* Doc. No. 128-4 (letters from Georgi-Ann Bargamian to Barrington); *see also* Barrington Dep., Union ex. 7 (Feb. 18, 2005, letter from Barrington to Gary Castell).

In the meantime, Arbitrator Williams reopened the hearing.  Doc. No. 123-18.  The hearing

resumed on April 13, 2005.  At this hearing, Barrington, Wilson, King, and Barrington's co-

workers, Ronald Sutton and Patricia Carson, testified.  TR. II.  Barrington avers that LMC tried to

introduce a document allegedly written by Wilson that she believed was fraudulent because

Wilson testified that it did not look like his handwriting.  Barrington Dep. at 46 & LMC ex. 8.

After the hearing concluded, Barrington wrote a letter complimenting Barnette's handling of the

second hearing.  *See* Compl. ex. L (April 15, 2005, letter from Barrington to Bargamian); *accord*

Compl. ¶ 21; Barrington Dep. at 56.

Barrington worked with Barnette on the post-arbitration brief.  Barrington Dep. at 58-59,

123-41 & Union exs. 11, 12.  Among other things, Barnette reviewed the brief Barrington wrote

and incorporated some of her suggestions into the post-arbitration memorandum he filed.  Barnette

Aff. ¶ 15.  However, he did not incorporate all of her suggested revisions.  Barrington Dep. at 60-

62.  Barnette did not return all of Barrington's telephone calls during this period.  Barrington Dep.

at 59.

On July 27, 2005, Arbitrator Williams issued his Opinion and Award.  He framed the

question presented as follows: "Was [Barrington] discharged for just cause and, if not, what shall

be the remedy?"  Arbitrator's Decision at 2.  He concluded that while Wilson had not consented

to his hair being cut, under the progressive discipline policy in place Barrington should only have

been issued a written warning, not terminated, for the hair-cutting incident.  *Id*. at 16-17.

However, he concluded that Barrington intentionally harmed McCarthren and McGill when she

filed the lawsuits against them, which conduct supported her termination.  *Id*. at 17.  In doing so,

-10-

he acknowledged that the lawsuits were not a stated basis for terminating Barrington.  *Id*. at 21.

However, he concluded that because Barrington's "pursuit of frivolous lawsuits arose out of

conduct that was the subject of the case," and that any post-award discipline based on this conduct

would be barred, it was appropriate for him to consider it.  *Id.* at 22.  Accordingly, he denied

Barrington's grievance, and upheld LMC's decision to terminate her.

       *C.*      *Post-Arbitration Matters*.

      After Arbitrator Williams issued his decision, Barrington filed a request for review with

the NLRB, doc. no. 128-6, which she later withdrew, doc. no. 128-11 at 11.  She requested that

both Local 788 and the UAW file an action in court to vacate the arbitration award.  Barrington

Dep., LMC ex. 11; Doc. No. 128-7 at 2-8 (September 2, and September 18, 2005, letters from

Barrington to Bargamian).  She also sent a letter to Bargamian complaining about Barnette's

representation.  Barrington Dep., Union ex. 14.[3]

      Bargamian advised Barrington that while the UAW disagreed with the arbitrator's analysis,

the UAW has an institutional policy not to move in court for the vacation of an arbitration decision

"no matter how bad it thinks the arbitration decision is.  And we do that so employers will bargain

binding arbitration clauses with us."  Bargamian Dep. at 17; *see also* Mason Aff. ¶¶ 2-3; Barnette

Aff. I ¶ 17.  The UAW advised the NLRB of this policy as well.  Doc. No. 128-11 at 2-6.

Barrington acknowledged that she was unaware of Local 788 ever having moved to vacate an

arbitration decision.  Barrington Dep. at 126-27.

---

    [3]  Barrington also filed a complaint against the arbitrator.  Doc. No. 128-9.

Bargamian also sent to Barrington a copy of the UAW Constitution.  Bargamian Dep. at 7; Mason Aff. ¶ 5.  The UAW Constitution provides for several levels of appeal regarding the handling of a grievance.  After seeking relief at the appropriate local levels, review of decisions can be sought at the international level by sending a written request for review to the appropriate reviewing body in care of the International President.  The International President has the authority to decide an appeal directly rather than submitting it to an Appeals Committee.  However, "[i]n any appeals involving the handling of a grievance against an employer, the decision of the International President shall be submitted to the Nine (9) Member Committee of the International Executive Committee."  UAW Const. Art. 33 sec. 3(d).  If dissatisfied with the decision of the International Executive Committee, the union member can appeal the decision to the Public Review Board.  *Id.* Art. 33 sec. 3(f).  The Public Review Board has the power to require the Union to reinstate the grievance.  Klein Dep. at 12; Klein Aff. ¶ 11; *see also* Stokes-Wilson Aff.  The UAW Constitution further provides that "[i]t shall be the duty of any individual or body, if aggrieved by any action, decision or penalty imposed, to exhaust fully the individual or body's remedy and all appeals under this Constitution and the rules of this Union before going to a civil court or governmental agency for redress."  Union Const., Art. 33, sec. 5.

Barbara Klein, Executive Director of the Public Review Board, averred that "[a]n examination of the files of the [Public Review Board] reveals no appeal was filed by" Barrington.  Klein Aff. ¶ 12; Klein Dep. at 4.  Eunice M. Stokes-Wilson, the administrative assistant to Gettelfinger, averred that a review of the records of the President's Office did not reveal any appeal by Barrington.  Stokes-Wilson Aff. at 3.

-12-

Barrington then filed the present action in this Court.  Doc. No. 1.

## II.     STANDARD OF REVIEW.

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The Supreme Court explained the rule as follows:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "The Court must consider all inferences drawn from the underlying facts in a light most favorable to the party opposing the motion, and resolve all reasonable doubts against the moving party. . . . If material issues of fact exist, the Court must not decide them, but rather, must deny the motion and proceed to trial." *Kitchings v. Fl. United Methodist Children's Home, Inc*., 393 F. Supp. 2d 1282, 1291 (M.D. Fla. 2005) (internal citations omitted).

"'Genuine disputes are those in which the evidence is such that a reasonable jury could return a verdict for the non-movant.  For factual issues to be considered genuine, they must have a real basis in the record.' . . .  For instance, mere conclusions and unsupported factual allegations

-13-

are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1325-26 (11th Cir. 2005)(quoting *Mize v. Jefferson City Bd. of Educ.,* 93 F.3d 739, 742 (11th Cir. 1996)).

### III.   ANALYSIS.

*A.    Subject-Matter Jurisdiction and Standing.*

In her motion to vacate the arbitration decision, Barrington asserts that the arbitrator exceeded his authority by finding that her termination was justified based on issues that were not part of her grievance.  She also contends that the arbitration decision should be vacated because it was procured by corruption, fraud, or undue means, including that the Union violated its duty of fair representation.  She also contends that LMC committed fraud with respect to the arbitration proceedings by use of allegedly false documents.  Doc. No. 128 at 5.   The Honorable Patricia C. Fawsett, formerly the presiding judge in this case, liberally construed Barrington's motion to vacate the arbitration award as stating a hybrid cause of action under for breach of the duty of fair representation and under § 301 of the Labor-Management Relations Act (LMRA), 29 U.S.C. § 185, and a cause of action under the Federal Arbitration Act (FAA), 9 U.S.C. § 1.  Doc. No. 40; *see* Doc. No. 1 ¶ 17.

Judge Fawsett determined that this Court has subject-matter jurisdiction in this case because Barrington's argument that the Union did not fairly represent her arises under a federal law, specifically § 301 of LMRA.[4]  Doc. No. 40.  Judge Fawsett also determined that the United

---

[4]  A suit against an employer and the union in this context involves two causes of action.  The employee sues the employer for breach of the collective bargaining agreement in violation of § 301 of LMRA.  The employee sues the union for breach of its duty of fair representation, which is implied under the National Labor Relations Act.  The United States Supreme Court has recognized that these

States Court of Appeals for the Eleventh Circuit would likely hold that the procedures of the FAA

apply to an arbitration conducted pursuant to the provisions of a collective bargaining agreement

to the extent that those procedures do not contradict the more specific provisions of LMRA.  *Id.*

Judge Fawsett further found that Barrington has standing to challenge the arbitrator's

decision, even though she is not a party to the CBA.  She based this decision on Barrington's

assertion that she was injured by the Union's breach of its duty of fair representation.  *Id.*

While LMC disagrees with Judge Fawsett's decision regarding the applicability of the

FAA to the present case, it has not cited any intervening change in the law or new, material facts.

Accordingly, I will not revisit her decision.

> B.      *Whether The Arbitration Decision Should Be Vacated Because Local 788 Violated
>         Its Duty To Represent Barrington Fairly.*

The United States Supreme Court has held that an employee represented by a union may

challenge a decision made by an arbitrator pursuant to the grievance mechanism of a collective

bargaining agreement if the employee can establish that the union violated its duty to represent her

fairly at the arbitration and that her discharge was contrary to the contract.  *See Hines v. Anchor*

*Motor Freight, Inc.*, 424 U.S. 554, 570-71 (1976).   "A breach of the statutory duty of fair

representation occurs only when a union's conduct toward a member of the collective bargaining

unit is arbitrary, discriminatory, or in bad faith."  *Vaca v. Sipes*, 386 U.S. 171, 190 (1967).   It is

insufficient merely to establish that the underlying grievance was meritorious.  *Id.* at 194.

Accordingly, in resolving the pending motions for summary judgment, it is appropriate to address

---

two causes of action are inextricably interdependent. *See DelCostello v. Int'l Bhd. of Teamsters*, 462
U.S. 151, 164-65 (1983).

first Barrington's claim that Local 788 violated its duty to represent her fairly during the arbitration.

Barrington contends that the Union violated its duty to represent her fairly in a number of ways, discussed in more detail below.   LMC and Local 788 contend that Barrington cannot prevail on this issue because she did not exhaust internal union procedures to resolve the issue of the fairness of the Union's representation of her.   LMC and Local 788 also contend that the undisputed facts establish as a matter of law that the Union did not violate its duty to represent Barrington fairly.[5]  I will address the failure to exhaust internal procedures before turning to the merits of the claim.

1.   <u>Failure to Exhaust Internal Review Procedures</u>.

As discussed above, the UAW Constitution provides for several levels of internal review if a union member is dissatisfied with the way the Union handled a grievance.  Local 788 contends that Barrington failed to exhaust her complaint of unfair representation through all of the internal levels of review.  It submitted evidence that there is no record that Barrington sought review by the Public Review Board, the last step in the internal review process.

The United States Court of Appeals for the Eleventh Circuit has held that a court has discretion to decide whether to require exhaustion of internal union procedures.

> In exercising this discretion, at least three factors should be relevant: first, whether union officials are so hostile to the employee that he could not hope to obtain a fair hearing on his claim; second, whether the internal union appeals procedures would

---

[5]  In its response to Barrington's motion for summary judgment, LMC also notes that it raised an affirmative defense that the motion to vacate the arbitration award was not timely filed.  Doc. No. 132 at 19.  LMC did not address this affirmative defense in its motion for summary judgment, or present any legal argument regarding this defense.  Accordingly, I will not consider it at this time.

be inadequate either to reactivate the employee's grievance or to award him the full relief he seeks under § 301; and third, whether exhaustion of internal procedures would unreasonably delay the employee's opportunity to obtain a judicial hearing on the merits of his claim.  If any of these factors are found to exist, the court may properly excuse the employee's failure to exhaust.

*Rader v. United Transp. Union*, 718 F.2d 1012, 1014 (11th Cir. 1983)(citing *Clayton v. UAW*, 451 U.S. 679, 689 (1981)).

This is a case in which discretion favors excusing Barrington's failure to exhaust her internal appeals under the UAW Constitution.  While the evidence establishes that the Union could reopen her grievance, there is no showing that the CBA permits the Union to give Barrington the complete relief she seeks – that is, assigning her a new union representative, reopening the arbitration, and designating a new arbitrator.   Furthermore, at this stage of the litigation, requiring Barrington to exhaust the internal levels of review would unreasonably delay the resolution of the case on the merits in this Court.  Accordingly, the Court will proceed to consider the merits of Barrington's contention that the union failed to represent her fairly.

2.     Breach of Duty of Fair Representation.

Barrington relies on the following arguments to support her contention that Local 788 violated its duty to represent her fairly: (1) Barnette talked Barrington out of accepting a settlement before the initial arbitration hearing; (2) Barnette did not call her to testify at the initial arbitration hearing; (3) Barnette refused to submit an affidavit of Rickie Wilson into evidence at the initial arbitration hearing; (4) Barnette introduced issues not included in her grievance at the hearing, specifically her lawsuits against McCarthren and McGill; (5) the Union refused her request for a new representative after the conclusion of the initial arbitration hearing; (6) the

-17-

Union refused her request made at the conclusion of the initial arbitration hearing to seek a new arbitrator; (7) Barnette spoke with the arbitrator between the two arbitration hearings; (8) Barnette did not communicate with her or follow her instructions regarding preparation of the post-arbitration memorandum; and (9) the Union did not move to vacate the arbitration award in this Court.  Doc. No. 128.

To establish that the Union breached its duty of fair representation with respect to her, Barrington must show that the Union's handing of her grievance was "arbitrary, discriminatory, or done in bad faith." *Parker v. Connors Steel Co.*, 855 F.2d 1510, 1520 (11th Cir. 1988) (citing *Harris v. Schwerman Trucking Co.*, 668 F.2d 1204, 1206 (11th Cir. 1982)).   Negligence alone is insufficient.  *Id.*

(a)        The Union's Actions Were Not Arbitrary.

"A union's conduct can be classified as arbitrary only when it is irrational, when it is without rational basis or explanation." *Marquez v. Screen Actors Guild, Inc.*, 525 U.S. 33, 46 (1998).  Put another way, "a union's actions are arbitrary 'only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness as to be irrational.'" *Papavaritis v. Commc'n Workers of Am.*, 772 F. Supp. 604, 606 (S.D. Fla. 1991) (quoting *Airline Pilots Ass'n Int'l v. O'Neill*, 499 U.S. 65, 67 (1991)).

The undisputed evidence is insufficient to establish that the Union's actions were arbitrary under this standard.  The Union offered a rational explanation for each of the acts about which Barrington complains.  Specifically, according to Barrington's notes, Barnette advised her not to

-18-

accept the settlement offers and not to testify at the initial arbitration hearing because he believed LMC could not support her termination without Wilson being available to testify.

Barnette's decision that Barrington should not testify or submit Wilson's affidavit were based on the same rationale.  Moreover, these issues were resolved when she and Wilson testified at the reopened hearing.

The arbitration hearing transcript reflects that counsel for LMC, not Barnette, introduced evidence regarding the defamation lawsuit Barrington filed against McCarthren.  TR. I at 120. This information having been provided to Arbitrator Williams, it was rational for Barnette to elicit testimony from Barrington about the lawsuits, including that the cases had been dismissed.  TR. II at 63-67.

The evidence establishes that Barnette reviewed Barrington's suggestions for the post-arbitration memorandum of law and incorporated some of her suggestions into the memorandum he filed.  While Barrington avers that she believed Barnette failed to communicate with her sufficiently and follow her instructions with respect to the preparation of the post-arbitration memorandum, it was not unreasonable for Barnette to determine which arguments to raise and in what manner in the post-arbitration memorandum because Barnette had experience litigating Union arbitrations and preparing the documents attendant to such arbitrations.

As for Barnette's contact with Arbitrator Williams, the undisputed evidence establishes that the discussion was only to confirm the date of the reopened hearing.  This was reasonable.

Finally, the Union adequately explained its decisions regarding its denial of Barrington's requests for a new arbitrator and new representative and her request that the Union seek to vacate

the arbitration award.  As explained by Bargamian, Arbitrator Williams was selected jointly by the Union and LMC under the governing rules, and the contact between Arbitrator Williams and Barnette regarding the date for the reopened hearing did not provide a reasonable basis to conclude that the arbitrator should be replaced.  Bargamian also indicated that the Union believed Barnette would continue to represent Barrington appropriately, which belief was supported by Barnette's continued actions to support Barrington's grievance throughout the reopened arbitration hearing and post-arbitration briefing.

As for the decision not to seek to vacate the arbitrator's decision, the undisputed evidence establishes that the Union does not move to vacate decisions rendered in binding arbitration so that employers will agree to binding arbitration provisions in collective-bargaining agreements. This is a rational basis for the Union's position.  *Cf. Freeman v. Local Union No. 135*, 746 F.2d 1316, 1322 (7th Cir. 1984) (observing that requiring a union to seek to vacate an arbitration decision would "perhaps weaken reliance on the arbitration process by employers and unions.").

Because the undisputed evidence establishes a rational basis supporting Barnette's and the Union's actions as to the matters about which Barrington complains, she has failed to prove that the Union acted arbitrarily.

*(b)*	*The Union's Actions Were Not Discriminatory.*

To establish that the Union's actions were discriminatory, Barrington must show that the Union treated her differently than other similarly situated Union members.  *See Massey v. United Transp. Union*, 868 F. Supp. 1385, 1394 (S.D. Ga. 1994). There is no evidence of discriminatory treatment of Barrington by the Union.

(c)     *The Union Did Not Act in Bad Faith.*

To establish that Barnette or other Union officials acted in bad faith, Barrington must show that they acted in "the absence of honest purpose and judgment or the presence of hostility or discrimination . . . ." *Freeman v. O'Neal Steel, Inc.*, 609 F.2d 1123, 1128 n. 9 (5th Cir. 1980). The "proof of unfair representation must demonstrate 'substantial evidence of fraud, deceitful action or dishonest conduct.'" *Id.* (quoting *Amalgamated Ass'n of Street Employees v. Lockridge*, 403 U.S. 274, 299 (1971)). Subjective suspicions are insufficient to support a finding of bad faith. *Id.*

In support of her bad faith argument, Barrington speculates that the reason Barnette did not permit her to testify during the initial arbitration hearing was that the Union wished to protect McCarthren and McGill. Barrington concedes that she has no independent evidence to support her suspicion. Furthermore, her suspicion is inconsistent with Barnette's failure to object to McCarthren's testimony about the lawsuit Barrington filed against her. As such, the evidence in this case does not establish that Barnette's actions were motivated by a intent to protect other union members. In this respect, this case is distinguishable from the facts in *Achilli v. John J. Nissen Baking Co.*, 989 F.2d 561 (1st Cir. 1993), in which the court found that a union acted in bad faith when the union representative failed to introduce evidence because the evidence would reflect badly on the union as a whole.

Barrington also contends that Barnette acted in bad faith by failing to offer Wilson's affidavit at the initial arbitration hearing, failing to challenge the handwritten statement with unidentified handwriting on it, and failing to call other witnesses at the initial hearing. In this case

-21-

the failure to present evidence cited by Barrington was remedied when Barrington and Wilson testified at the reopened hearing.  Moreover, a union representative's decisions regarding what evidence to present or challenge, including whether to call the grievant to testify, are strategic choices entitled to deference.  *See Garcia v. Zenith Elec. Corp.*, 58 F.3d 1171, 1177-78 (7th Cir. 1995).

Barnette's failure to oppose introduction of evidence of Barrington's lawsuits against McCarthren and McGill or to argue that the arbitrator could not rely on that evidence to support her termination is also insufficient to establish that he acted in bad faith. "The union representative is not a lawyer and he cannot be expected to function as one." *Freeman*, 609 F.2d at 1127.

Barrington also contends that Barnette was hostile to her, which undermined his effective representation of her.  However, taking Barrington's averments of Barnette's expressed hostility to her in the light most favorable to her, there is no evidence that the perceived hostility in any manner undermined the Union's representation of Barrington during the arbitration or was the basis of the Union's decision not to move to vacate the arbitration decision.  *Cf. Freeman*, 609 F.2d at 1127 (to support a finding of bad faith evidence must show that hostility, rather than appropriate considerations, influenced the union representative's decisions).  As such, no reasonable factfinder could conclude that Barnette's expressions of anger or frustration with Barrington rose to the level of hostility necessary to support a finding that Barnette acted in bad faith in his representation of Barrington.

Accordingly, the undisputed material facts, viewed in the light most favorable to Barrington, do not establish that the Union violated its duty to represent her fairly.

C.      *Motion to Vacate Arbitration Award.*

The United States Supreme Court has analogized a hybrid § 301 claim against an employer to a motion to vacate an arbitration award in a commercial setting.  *United Parcel Serv., Inc. v. Mitchell*, 451 U.S. 56 (1981).  To prevail on this cause of action, Barrington must prove both that her discharge was contrary to the CBA *and* that the Union violated its duty of fair representation.  *See Hines*, 424 U.S. at 570-71.  Because, as discussed above, Barrington has not established that the Union violated its duty of fair representation, she necessarily cannot succeed on the claim that the arbitration decision should be vacated because LMC discharged her in violation of the CBA.  *See Parker*, 855 F.2d at 1519 (citing *DelCostello*, 462 U.S. at 164-65).

Because Barrington cannot prevail as a matter of law on her motion to vacate the arbitration award, there is no need to address whether the arbitration procedure complied with the provisions of the FAA.  Indeed, based on Judge Fawsett's decision regarding standing, Barrington does not have standing to contest the adequacy of the arbitration procedure and the arbitrator's conduct because she did not prevail on the hybrid § 301 causes of action.

IV.    **CONCLUSION.**

For the reasons stated herein, it is **ORDERED** as follows:

1)      Plaintiff['s] Motion for Summary Judgment/Memorandum of Law in Support/ Demanding Jury Trial, doc. no. 128, is **DENIED**;

(2)     Defendant Lockheed Martin Corporation's Motion for Summary Judgment, doc. no. 122, is **GRANTED**; and

(3)     the Motion for Summary Judgment . . . of Defendant United Auto Workers Local

788, doc. no. 124, is **GRANTED**.

The Clerk of Court is directed to enter judgment for Defendants Lockheed Martin

Corporation and United Auto Workers Local 788 in accordance with this Order and thereafter to

close the file.  All other pending motions are **DENIED** as moot.

**DONE** and **ORDERED** in Orlando, Florida on March 16, 2007.

*Karla R. Spaulding*

KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties